VAN ORMAN *v.* PUFFER.

GUARANTY—CONTRACTS—VIOLATION—RELEASE.

> Where a brewing company contracted with a hotel company to allow certain rebates in the sale of beer, to apply on the payment of two notes owing to it by the hotel company, in case certain specified brands of its beer were sold exclusively in the saloons of said hotel company, and defendant, on the sale by him of the stock of said hotel company to plaintiffs, guaranteed to make good any deficit in case the rebates were insufficient to cancel the notes, if plaintiffs would faithfully perform the contract, evidence of a wilful violation of the contract, in the substitution of cheaper beer for the higher priced, for four months, thereby materially reducing the sales of beer, *held*, sufficient to release defendant, although the brewing company did not exercise its option to declare said contract violated.

Error to Jackson; Parkinson, J. Submitted October 16, 1918. (Docket No. 76.) Decided December 27, 1918.

Assumpsit by Fred Van Orman and another against Elmer C. Puffer for breach of a contract of guaranty. Judgment for defendant. Plaintiffs bring error. Affirmed.

*Thomas M. Poynton,* for appellants.

*Sidney S. Gorham* and *John F. Henigan,* for appellee.

The Victoria Hotel Company is an Illinois corporation with outstanding capital stock of the par value of $40,000. Under date January 28, 1910, the Victoria Hotel Company, by O. A. McClintock, its president, and O. A. McClintock personally, made an agreement with the Fred Miller Brewing Company, a Wisconsin corporation, in which agreement it is recited

that the hotel company and McClintock, parties of the second part, are jointly and individually the lessees of certain portions of a brick hotel building in Chicago known as the McCoy Hotel building, and that they have agreed to sell upon said premises domestic draught beer manufactured and sold by the Fred Miller Brewing Company, party of the first part, and to sell no other domestic draught beer upon the premises during the term of the agreement and upon the terms and conditions therein recited. The agreement on the part of the Fred Miller Brewing Company expressed in the instrument is to advance and lend to the second parties (the hotel company and McClintock) the sum of $10,000, to take two promissory notes of $5,000 each as evidence of the loan, due respectively May 1, 1915, and May 1, 1920, each of the notes to bear an indorsement to the effect that it is issued subject to the terms and provisions of the said agreement to sell to the second parties all of the domestic draught beer which they "may need, use, sell, consume, or give away upon the above described premises," at stated prices, the brand known as "High Life" at $8 a barrel, the brand known as Pilsener at $5.50 a barrel, and to sell to them also during the terms of the agreement bottled beer at 75 cents a dozen for small and $1.25 a dozen for large bottles, with the proviso that if at any time during the duration of the agreement the Federal internal revenue tax upon malt liquors is increased the increase shall be added to the said prices. The second parties agree that they will not purchase, use, sell, consume or give away upon the premises during the period of the agreement any domestic draught beer other than that manufactured and sold by the first party, and will purchase from the first party all that they may need, use, sell, consume or give away, and will purchase from the first party at least 60 per cent. of all the bottled beer used, sold, consumed or

given away upon the premises. They further agree that from and after May 1, 1910, they will maintain three saloons on the premises, two on the main floor and one in the basement, with the proviso that if any one of the saloons shall be operated at a loss during any six months' period they may discontinue the maintenance thereof.

"Parties of the second part agree that they will use in the two saloons and bars upstairs, exclusively, the grade and brand of beer known as 'High Life,' manufactured and sold by the party of the first part."

The agreement is to be in force until the second parties have purchased 5,000 barrels of "High Life" and 10,000 barrels of Pilsener beer, but not after the first day of May, 1920. While the agreement calls for payments to be made for beer in cash as it is delivered, it is a part of the agreement that whenever the second parties shall have purchased and paid for 2,500 barrels of "High Life" beer and 5,000 barrels of Pilsener beer, then, if they have also purchased from the first party 60 per cent. of all the bottled beer they have used upon the premises, the party of the first part will deliver up to the second parties the note for $5,000 due May 1, 1915. So it is provided that when the second parties upon the same conditions have purchased an additional 2,500 barrels of "High Life" and an additional 5,000 barrels of Pilsener, the party of the first part will cancel and deliver up, the second $5,000 note due May 1, 1920. If, however, before May 1, 1915, the parties of the second part, having performed their agreement, have not purchased and paid for enough beer to secure the cancellation of the said notes in either of said periods they shall yet be entitled on the first of May, 1915, and on the first of May, 1920, to a credit of 66 2/3 cents a barrel for each barrel which they have purchased and paid for, said credit to be applied upon the said notes, and to a

further credit of a sum equal to 25 cents for each barrel of Pilsener beer in excess of double the number of barrels of "High Life" beer so purchased as aforesaid during the said periods. The parties of the second part agree to pay to the party of the first part the difference between the amount of the credits and the principal sum of each of said notes. If the parties of the second part purchase, sell, handle or give away on the premises domestic draught beer other than manufactured and sold by the first party (except in a case where the first party is unable to supply the beer)—

"For a period of ten (10) days after written notice from first party to discontinue the sale of such other domestic draught beer, then the notes hereinbefore referred to shall become at once due and payable."

The agreement is made binding jointly and individually upon the parties of the second part,—

"its successors and assigns, and his heirs, executors, administrators and assigns, and upon the successors and assigns of said first party."

A supplement to this agreement was made in another writing, dated the same day, namely, January 28, 1910, by which it is provided that if the parties of the second part sell a total of 7,500 barrels of beer during either or both of the five-year periods named in the original agreement, of which total more than one-third shall be of the brand known as "High Life," they shall be entitled to a credit of 66 2/3 cents for each barrel of beer sold. It is further agreed that in the event that the first note, due May 1, 1915, shall be surrendered and canceled as in the original agreement provided for prior to the date of its maturity, the parties of the second part shall be entitled to a credit upon the second note for all beer sold from and after the date of the cancellation of the first note.

Pursuant to this agreement, the Victoria Hotel Company and McClintock made two promissory notes,

dated January 28, 1910, by the terms of the first of which they promised to pay to the Fred Miller Brewing Company $5,000 May 1, 1915, at its office in Milwaukee, Wisconsin, with interest at 5 per cent. per annum after maturity until paid. The note is issued subject to the terms and provisions of a certain agreement made between the Fred Miller Brewing Company and the makers, dated January 28, 1910.

On September 22, 1910, the said Oliver A. McClintock and the defendant, Elmer C. Puffer, entered into an agreement in writing, in which it is recited that McClintock, the party of the first part, and his associates own the entire capital stock of the Victoria Hotel Company and have agreed to sell it to Puffer upon terms and conditions expressed in said agreement. The terms and conditions, in so far as they need to be stated, are that the party of the first part will transfer and deliver stock certificates representing the entire outstanding capital stock of the corporation and accept as payment $85,000, $40,000 in cash and $45,000 in deferred payments. It is a part of the agreement that the party of the first part, McClintock, will indemnify and save harmless the party of the second part and the Victoria Hotel Company—

"against any and all debts and obligations due and owing by said corporation for property or merchandise purchased and delivered, or services rendered or benefits received by said corporation prior to the hour of twelve (12) o'clock midnight on September thirtieth, A. D. 1910, and will pay, or cause to be paid, all such debts and obligations of said corporation; it being the intention of the parties hereto that upon the delivery to the party of the second part, of the capital stock of said corporation, on said thirtieth day of September, A. D. 1910, said corporation shall be free from debt, but shall remain liable upon all contracts made by it prior to said first day of October, A. D. 1910, by the terms of which any moneys shall become due and payable from and after said last named

date, for or on account of property or merchandise thereafter delivered or services thereafter rendered said corporation or benefits thereafter received by or accruing to it; provided, however, that all cash on hand, moneys in bank and all sums due and owing to said corporation, or to which said corporation may have become entitled prior to October first, A. D. 1910, shall belong to, and be the property of the party of the first part and his associates, as the owners of the capital stock of said corporation prior to said last named date."

The third paragraph of this agreement reads as follows:

"*Third.* In case the said Victoria Hotel Company shall faithfully comply with the terms of that certain contract with the Fred Miller Brewing Company, dated January 28th, A. D. 1910, and perform all the obligations imposed upon it by the terms of said contract according to the letter and spirit thereof, and shall be unable to sell such a quantity of draught beer as will, under the terms of said contract, entitle it to the cancellation of the two (2) notes for five thousand dollars ($5,000.00) each, mentioned in said contract, the party of the first part will, on demand of said Victoria Hotel Company and the party of the second part, pay to said Fred Miller Brewing Company such a sum of money as, added to the amount to which said hotel company shall be entitled as a credit upon said notes under the terms of said contract, shall be necessary to liquidate and pay said notes according to their tenor and effect; provided, however, that in case the said Victoria Hotel Company shall become entitled to the cancellation of said notes (either by partial payment in cash of the note first to mature or otherwise), prior to May first, A. D. 1920, the party of the second part shall pay, or cause to be paid to the party of the first part such a proportion of ten thousand dollars ($10,000.00) as the unexpired portion of the term of ten (10) years beginning May first, A. D. 1910, and ending May first, A. D. 1920, bears to the entire term of ten (10) years. To illustrate: if the quantity of beer sold under the terms of the agreement with said Fred Miller Brewing Company, together with any

moneys paid on account of the note first to mature, shall entitle the said hotel company to a cancellation of the second of said notes at the expiration of nine years from May first, A. D. 1910, then the amount due the first party hereunder will be one thousand dollars ($1,000.00)."

Under date September 30, 1910, in another writing, executed by McClintock and Puffer, there is the identical third clause of the original contract above set out.

By an agreement in writing, dated January 31, 1913, in which defendant Puffer is party of the first part and the plaintiffs parties of the second part, the defendant agreed to sell and sold to the plaintiffs all the issued capital stock of the Victoria Hotel Company, and the parties of the second part, the plaintiffs, agreed to buy said stock in accordance with provisions set out in the agreement, those provisions which are important here being similar to, for the most part identical with, the ones already set out and recited in the agreement by which the defendant became possessed of the stock and business of said corporation, that is to say: the defendant as party of the first part agreed to indemnify the parties of the second part and the Victoria Hotel Company against any debts or obligations owing by the corporation for property or merchandise purchased or services rendered prior to six o'clock p. m. on January 31, 1913, and to pay all such debts and obligations, and *second,* agreed that in case the Victoria Hotel Company faithfully complied with the terms of a certain contract with the Fred Miller Brewing Company, dated January 28, 1910, and should still be unable to sell such a quantity of draught beer as would entitle it to the cancellation of the two $5,000 notes, the party of the first part would on demand of the Victoria Hotel Company and the parties of the second part pay to the said Fred Miller Brewing Company such a sum of money as, added to the amount to which the said hotel company

was entitled as a credit under the terms of the contract, would be necessary to liquidate and pay the notes according to their tenor and effect. It is a part of said last mentioned provision:

"Provided, however, that in case the said Victoria Hotel Company shall become entitled to the cancellation of said notes (either by partial payment in cash of the note first to mature, or otherwise), prior to May 1st, 1920, the parties of the second part shall pay, or cause to be paid, to the party of the first part such a proportion of ten thousand dollars ($10,000) as the unexpired portion of the term of ten (10) years, beginning January 31st, 1913, and ending May 1st, 1920, bears to the entire term of 10 years. To illustrate: If the quantity of beer sold under the terms of the agreement with said Fred Miller Brewing Company, together with any moneys paid on account of the note first to mature, shall entitle the said hotel company to a cancellation of the second of said notes at the expiration of, to-wit: seven (7) years from January 31st, 1913, then the amount due the party of the first part hereunder shall be seven hundred and fifty dollars ($750)."

Plaintiffs were operating the hotel when the first $5,000 note made to the Fred Miller Brewing Company fell due, that is, on May 1, 1915. A settlement was made between the Victoria Hotel Company and the Fred Miller Brewing Company, according to which a credit was given upon said note for beer purchased, so that the balance due upon the said note was $1,402, and that sum the Victoria Hotel Company paid and the note was canceled. They asked defendant Puffer to reimburse them, and upon his declining to do so brought this suit.

Their declaration, which was filed August 26, 1916, contains the averment, among others, that the Victoria Hotel Company has faithfully complied with the terms of its said contract with the Fred Miller Brewing Company and performed all the obligations imposed upon it by the said contract according to the

letter and spirit thereof, but that the Victoria Hotel Company had been unable to sell such quantity of draught beer as would entitle it to the cancellation of its note, so that there became due and owing on the note on the first of May, 1915, $1,402, whereupon a demand was made upon defendant to liquidate said indebtedness in accordance with his contract with these plaintiffs; that the defendant neglected and refused to settle said indebtedness, whereupon, on the 3d of June, 1915, the Victoria Hotel Company paid the Fred Miller Brewing Company the said sum of money; that by reason of the failure of the defendant to perform his contract the assets of the Victoria Hotel Company have been depleted to the extent of $1,402 and the use thereof from the 3d of June, 1915, resulting in a depreciation in value of the 400 shares of the issued capital stock of said corporation purchased by the plaintiffs, "to plaintiffs' damage in the sum of two thousand dollars." To these allegations the common money counts in assumpsit are added.

The defendant with his plea gave notice of special defenses based upon the alleged violation by plaintiffs of the agreement of the Victoria Hotel Company with the Fred Miller Brewing Company, not all of which seem to have been relied upon at the trial, and only one of which, at the most two, were found by the trial court to have been sustained by evidence.

It is stipulated by counsel that the period during which the Victoria Hotel Company sold Pilsener beer at the upstairs bar of its premises is correctly shown by the records of the Fred Miller Brewing Company, to wit, from October, 1914, to February, 1915, inclusive.

Defendant gives notice with his plea that if the contract had been faithfully lived up to, and there was a shortage, he had a contract with McClintock which would authorize him to call upon McClintock

to pay the Fred Miller Brewing Company; that the plaintiffs were aware of this fact and, without authority from defendant or McClintock, after violating the contract with the Fred Miller Brewing Company, elected to pay an alleged claim of the Fred Miller Brewing Company, foreclosing both defendant and the said McClintock, without opportunity for either defendant or McClintock to be heard as against the said claim of the Fred Miller Brewing Company. One of the alleged defenses is:

"The plaintiffs, after they came into possession of the capital stock of the Victoria Hotel Company, in conducting the Victoria Hotel Company, without the consent of the said Oliver A. McClintock [or] of this defendant, changed from High Life Beer to Pilsener beer in one bar, when the revenue tax was raised fifty cents per barrel, they then took Pilsener beer instead of High Life beer."

The notice of special defense numbered 3 reads as follows:

"This defendant will further insist and show in his defense that the Victoria Hotel Company, during the time its stock was owned by the plaintiffs, breached the contract in the particulars hereinbefore mentioned; that the Fred Miller Brewing Company acquiesced in the breaches of the contract, for instance, the contract provided that Pilsener beer would be sold in the corner basement saloon only and High Life would be sold in the two saloons on the street level; instead of living up to this part of the contract, the Victoria Hotel Company, under the management of the plaintiffs, with the consent and acquiescence of the Miller Brewing Company, sold Pilsener beer in the Clark street barroom contrary to the contract, and by its action in this regard the Miller Brewing Company acquiesced in the violation of the contract and estopped itself from asserting the contract against the Victoria Hotel Company and was not legally entitled to be paid the $1,400 which the plaintiffs claimed to have paid it, and for that reason the plaintiffs cannot recover."

203—Mich.—41.

Other alleged special defenses seem to have been disposed of upon the evidence, leaving the one conceded failure of the Victoria Hotel Company to perform the contract as the sole basis for defendant's contentions and the court's conclusions.

The court as requested to do made certain findings of fact and conclusions of law. Proposed findings were submitted by counsel as well as points of law under the rule, a large number of exceptions were taken to the findings of the court, various amendments were proposed. There was a motion for a new trial made by plaintiffs, judgment having gone against them, and a new trial was refused. There are 26 assignments of error. It will be sufficient for an understanding of the issue to set out a part only of the findings of fact and the conclusions of law and to refer to the objections made thereto:

"8. It is conceded by stipulation on file that the Victoria Hotel Company (which is really the plaintiffs in this case), sold Pilsener beer instead of High Life, in the two saloons upstairs and for a period of about four months, from November, 1914, to February, 1915, both inclusive.

"9. Defendant contends this is such a breach of the contract with the Fred Miller Brewing Company, which plaintiffs were bound to abide by and perform according to its letter and spirit and for his protection and exoneration, as released him from or precludes plaintiffs from recovering from him any deficiency arising from insufficient sales of beer necessary to entitle him or plaintiffs to a cancellation of this $5,000 note now in question.

"The plaintiffs deny this contention and say it was not a violation of the real intent or meaning of the contract. That, at any rate, the defendant does not show he was damaged by it; that, in fact, he was not, and that the Fred Miller Brewing Company considered and treated the contract as having been faithfully performed. Plaintiffs' counsel insist this is, if a breach, one that, as it operated, was immaterial, entailing no loss and that defendant is not discharged by reason of it.

"10. Passing for the present the question as to whether it was such a breach on plaintiffs' part as releases defendant irrespective of proof of damage, and the question as to whom the burden of proof is upon to show damage or want of damage, I find the proofs upon this question, from the testimony of H. W. Borgman, bookkeeper for the Fred Miller Brewing Company, show that for October, 1914, there were bought by plaintiffs from that company, 23 barrels of High Life beer and 2 of Pilsener; in November, 19 barrels of Pilsener and 2 of High Life; in December, 23 barrels of Pilsener and apparently none of High Life; in January, 1915, 23 barrels of Pilsener and none of High Life; and in February, 1915, 25 barrels of Pilsener and 1 of High Life. The testimony shows that when the Fred Miller Brewing Company learned that plaintiffs were selling the Pilsener contrary to contract they required the practice to stop and the terms of the contract to be complied with.

"Following this, the sales of High Life for March were 28 barrels. The same figures are given for April.

"Preceding this period for months, the monthly sales of High Life have been from 33 to 47 barrels of High Life, except in September, 1914, when they fell to 24 barrels and in October to 23 barrels.

"I make the following table from the testimony of the bookkeeper:

"Sales of High Life beer:

|         | 1913, bbls. | 1914, bbls. | 1915, bbls. |
|---------|-------------|-------------|-------------|
| Jan.    | 33          | 37          | 0           |
| Feb.    | 34          | 33          | 1           |
| March   | 30          | 36          | 28          |
| April   | 36          | 39          |             |
| May     | 33          | 40          |             |
| June    | 39          | 41          |             |
| July    | 51          | 47          |             |
| August  | 49          | 41          |             |
| Sept.   | 39          | 24          |             |
| Oct.    | 47          | 23          |             |
| Nov.    | 45          | 2           |             |
| Dec.    | 43          |             |             |

"Sales of High Life are not furnished after March, 1915.

"Sales of Pilsener:

|  | 1913, bbls. | 1914, bbls. | 1915, bbls. |
|---|---|---|---|
| Jan. | 28 | 51 | 28 |
| Feb. | 27 | 40 | 28 |
| March | 27 | 43 . | 29 |
| April | 36 | 46 | **36** |
| May | 42 | 41 |  |
| June | 42 | 31 |  |
| July | 36 |  |  |
| August | 42 | 46 |  |
| Sept. | 56 | 38 |  |
| Oct. | 86 | 36 |  |
| Nov. | 83 | 32 |  |
| Dec. | 77 | 25 |  |

"No figures are given for 1915 after April.

"If we consider sales of both kinds for November and December, 1914, and January and February, 1915, the aggregate is: for November, 34 barrels; December, 26 barrels; January, 28, and February, 29. For March, following the change back to contract terms, total sales of both kinds were 57.

"The only explanation for such diminished sales for these four months is the statement of Stowe that the business fell off; or that upstairs business was injured by the substitution of the cheaper beer, as counsel for the defendant claims; or that other beers not purchased of the Fred Miller Brewing Company were used; and I am not wholly satisfied, from the evidence, as to the real cause except that these diminished sales are coincident with the unauthorized change in handling these beers, and may be owing to that change and the proofs do not clearly explain them or show they were not due to it.

"11. I am not able to find, from the testimony, that defendant has not been damaged by the action of plaintiffs in violating the terms of the contract for four months. Not only were total sales diminished, but practically there were no sales of High Life, conditions not found for any similar period, and improved at once following a return to the contract requirements.

"12. Plaintiffs do not deny that for the four months mentioned, they violated the terms of the Fred Miller Brewing Company contract; that such company, when

informed of such violation, required its abandonment and a return to contract requirements, which were then complied with.

"13. I find, as doubtless already sufficiently appears, that the contract relations governing the parties and the Fred Miller Brewing Company are set forth in Exhibits A and B, defining their respective rights, duties and obligations.

"14. The declaration alleges that the Victoria Hotel Company, and meaning the plaintiffs also, has faithfully complied with its contract with the Fred Miller Brewing Company and has performed all the obligations imposed upon it by the terms of said contract, according to the letter and spirit thereof. Plaintiffs fail, by their proofs, to sustain this averment.

"15. The declaration also alleges that the plaintiffs have faithfully performed all the conditions of their said contract with defendant on their part to be performed. They also fail to prove this averment.

"16. I am unable to find that the greater weight of the evidence shows that the aforesaid violation of or departure from the terms of the contract as to the handling and sale of the two kinds of beer did not pecuniarily damage the defendant.

"If either party thinks I have omitted any material or necessary fact, I will supplement this finding of facts, if convinced I should do so.

### "Conclusions of Law.

"I, therefore, deduce the following conclusions of law:

"1. That inasmuch as there is no claim or proof that defendant authorized such violations of the contract by plaintiffs, or that he has approved or ratified them or waived his rights to strict performance, the burden is upon them to show that he was not damaged thereby and is not entitled to defend therefor.

"2. That in the absence of clear and satisfactory proof to the contrary, the presumption is that his rights were thereby adversely affected, or, in other words, damage will be presumed.

"3. That the case is not different in point of law from what it would have been had plaintiffs and the Fred Miller Brewing Company expressly agreed to

change the terms of the contract for the period of four months aforesaid, and permit plaintiffs to sell as they did sell, defendant not knowing of such modification and not assenting thereto.

"4. That under his contract, defendant was entitled to a strict performance of it on the part of plaintiffs. That plaintiffs have broken the contract on their part, and not having shown, by a fair preponderance of the evidence, that defendant was not injured pecuniarily thereby, they cannot recover.

"5. Under the contract with defendant, it was the duty of plaintiffs to fully perform for him his contract obligations to the Fred Miller Brewing Company, and so far as such performance could do so, protect and exonerate him from pecuniary liability on account of it. His relation was, in a way, like or analogous to that of a surety for plaintiffs and he should only be called upon by them to make good in case after strict performance on their part the amount of sales or credits thereon should fall short of satisfying the claims of that company. Plaintiffs have paid the Fred Miller Brewing Company, and now seek recovery of such payment for the shortage arising from their failure to sell sufficient quantities of beer to cancel it under the contract. For their failure to carry out their part of the contract by not performing all its obligations according to the letter and spirit thereof, they are not in a position to call upon the defendant to make good the deficiency.

"6. They cannot ask defendant to be bound when they, themselves, have not been bound, their own delinquency not having been excused or justified or clearly shown to have been harmless.

"7. I think the same questions would arise and be confronted were it claimed that recovery could be had under the common counts and there is no better reason for awarding judgment for the plaintiffs upon those counts than upon the special count upon the express contract.

"8. That plaintiffs have failed to sustain their case either under their pleadings or the proofs, wherefore the judgment must be for the defendant.

"That judgment should be for the defendant for the amount of the set-off as stipulated and found in

my opinion on file with some additional interest since May 1st, 1916. It may be computed and here inserted. Three hundred ninety-three dollars and fifty-five cents ($393.55).

"In part support of these conclusions of law, I call the attention of the parties to 3 Elliott on Contracts, sections 2102 and 2103, which I believe controlling under the evidence in this case."

The amendment to the findings of fact made by the court is to the finding numbered 10, affecting only certain figures, the effect of the amendment not appearing to be of importance as affecting the issue to be determined.

Nor do criticisms of the findings of fact made by appellants appear to apply to anything which affects the question to be determined. There are some slight inaccuracies pointed out, but an examination reveals nothing requiring comment. What plaintiffs claim is stated in the brief in the following language:

"It was shown by testimony introduced by plaintiffs, and not disputed by the defendant, that the only time during which the Victoria Hotel Company sold Pilsener beer at its Clark street main floor bar, was during the period from October, 1914, to February, 1915, when it sold 91 barrels of Pilsener beer at its upstairs or main floor bar. Although the contract with the Fred Miller Brewing Company required that the Victoria Hotel Company use only the brand of beer known as 'High Life,' at the upstairs bar, yet, the brewing company, in its settlement with the Victoria Hotel Company allowed the hotel company credit of 66 2/3 cents for each of the 91 barrels of Pilsener beer so used at the upstairs bar, and did not consider nor treat this departure from the strict terms of the contract as a violation. However, the defendant insists, and the circuit judge held, that it was such a departure from the terms of the contract as amounted to a breach, even though no damage is shown to have resulted to the defendant.

"It is claimed by plaintiffs that this slight deviation from the strict terms of the contract with the

Fred Miller Brewing Company, which could injure no one but the brewing company, and which the undisputed testimony shows, resulted in benefit and no injury to defendant, on account of the greater quantity of beer for which the hotel company was given credit on its note, was not such a departure from the strict terms of the contract as the parties intended should operate as a forfeiture of plaintiffs' rights to insist upon the defendant paying the $1,402 which became due on the Fred Miller Brewing Company note, in accordance with his contract with plaintiffs when they purchased the capital stock of the Victoria Hotel Company, and that the clear weight of the evidence shows performance of the contract sued upon, by the plaintiffs, in every essential detail, and in accordance with the purpose and intention of the parties, as expressed in the contract and shown by the admitted facts in the case."

And the questions involved are stated to be:

"1. Whether from the language of the contract, as a whole, and the facts and circumstances in evidence, it can be fairly said that it was intended by the contracting parties that the slightest deviation, on the part of the Victoria Hotel Company, from any detail of its contract with the Fred Miller Brewing Company, whether resulting in damage to defendant or not, would operate as a forfeiture of valuable rights which plaintiffs acquired under their contract with defendant, and thereby enable the defendant to reap the benefits of the contract, and yet, through a technicality and unconscionable advantage, escape responsibility for an obligation which he assumed when he sold the property to plaintiffs, and received the benefits of the $85,000 purchase price paid by plaintiffs.

"2. Whether the common law rule of strict performance or the modern rule of substantial performance is applicable to the situation in the instant case, where it is not disputed that the plaintiffs have substantially, in good faith, fulfilled the obligations of their contract with defendant, in its essential particulars, and where the defendant has brought forward no proofs whatever to show that he has been damaged in any manner by reason of the slight variance from strict

performance, upon which he relies to defeat plaintiffs'
claim.

"3. Whether the court erred in admitting the Mc-
Clintock contract in evidence.

"4. Whether the court erred in placing burden upon
plaintiffs to negative an affirmative defense where no
evidence was offered in support of such defense.

"5. Whether the circuit court's findings of fact and
conclusions of law are supported by the evidence."

OSTRANDER, C. J. (*after stating the facts*). There
is no occasion for considering the fifth question, be-
cause the court's conclusions are based upon a con-
ceded breach of the agreement, nor the third ques-
tion, unless a new trial is ordered, because the court,
although admitting the agreement between McClin-
tock and defendant in evidence, based no conclusion
and no material finding upon that evidence. The first,
second and fourth questions demand some discussion:
although the first two are stated in an argumentative
manner, they nevertheless present points upon which
appellants rely.

The Victoria Hotel Company was a party to the
contract with the Fred Miller Brewing Company, a
contract which, by its terms, might run for ten years,
and which, so far as the record discloses, is still in
force. The Victoria Hotel Company was a joint maker
of the notes given to the Fred Miller Brewing Com-
pany. In their agreement they made provision for
the contingencies of fire, injunctions, strikes, legal
proceedings, restrictions upon the traffic in liquors
and "any other unavoidable causes," and for the case
which might arise if the hotel company premises were
destroyed by fire or if, by the operation of a prohib-
itory liquor law, the selling of beer could not go on.
In any event, wilful failure on the part of the hotel
company to perform the contract after notice invited
liability to pay the notes immediately and unavoidable
failure to perform resulted also in immediate pay-

ment, but of the balance only after due credits were allowed.

The Victoria Hotel Company is not a party to any other of the contracts which have been referred to. It has remained, with McClintock, liable, primarily, to the Fred Miller Brewing Company upon the notes. Presumably, it had the advantage of the money furnished by the Fred Miller Brewing Company, or of some of it. But while the outstanding notes evidence a debt of the corporation, an analysis of the agreements clearly indicates that it was not a debt of the corporation which Puffer obligated himself to pay at all events. His undertaking is that if the hotel company shall faithfully comply with the terms of said contract, performing all of the obligations imposed upon it thereby,—

"and shall be unable to sell such a quantity of draught beer as will, under the terms of said contract, entitle it to the cancellation of the two (2) notes  *  *  * the party of the first part will, on demand of the said Victoria Hotel Company and the parties of the second part, pay to the Fred Miller Brewing Company such a sum of money as, added to the amount to which said hotel company shall be entitled as a credit upon said notes under the terms of said contract, shall be necessary to liquidate and pay said notes according to their tenor and effect."

So, that, while it appears that the Victoria Hotel Company might, at the end of the first five-year period, settle, as it did, with the Fred Miller Brewing Company and pay it whatever sum was required to pay and cancel the first $5,000 note, and while such settlement would bind the Victoria Hotel Company and the Fred Miller Brewing Company, it would not necessarily bind the defendant, since the hotel company might be willing to pay cash rather than sell beer, and the Fred Miller Brewing Company be willing to waive strict performance of the agreement.

We are impressed that the parties stipulated for strict performance of the contract of the Victoria Hotel Company with the Fred Miller Brewing Company, although it is not necessary to a decision that we should go quite so far. It is not necessary because it appears that the breach of the agreement by the Victoria Hotel Company was not inadvertent, did not grow out of any mistake, but was wilful. It continued for a period of four months. There is evidence to support the finding that the result of the breach was diminished total sales of beer and, consequently, of credits to apply upon the note. The effects of the breach cannot be measured, limited, but were plainly considerable. The Fred Miller Brewing Company protested, and the Victoria Hotel Company resumed the sale of "High Life" beer in its first floor bar. It may be assumed that it was because it is difficult to determine the effects of a breach that the contract was drawn with so much particularity. "According to the letter and spirit" is the provision.

We think the learned trial judge committed no reversible error, and therefore affirm the judgment.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.